**UNITED STATES of America,**
**Plaintiff,**

v.

**Kenneth Dale KINNEY, Defendant.**

**Cr. No. 18084.**

United States District Court,
E. D. Illinois.

Sept. 29, 1954.

Clifford M. Raemer, U. S. Atty., Salem, Ill., and John Morton Jones, Asst. U. S. Atty., Danville, Ill., for the United States.

John F. Twomey, Danville, Ill., and Ben F. York., St. Louis, Mo., for defendants.

PLATT, District Judge.

An indictment was returned by the grand jury against Kenneth Dale Kinney for failing to report for civilian work contributing to the maintenance of the national health, safety or interest, at the Elgin State Hospital, Elgin, Illinois, pursuant to the order of his draft board, in violation of Section 462, Title 50 U.S.C.A.Appendix. Mr. Kinney waived jury trial in accordance with Rule 23(a) of Fed.Rules Crim.Proc., 18 U.S.C.A. He waived any question of venue and stipulated that the selective service file should be considered in evidence.

Mr. Kinney maintains that he should be found not guilty for the following reasons:

1. The local board and appeal board erred in failing to classify him 4–D, and there was no basis in fact for the denial of a ministerial exemption.

2. The board erred in failing to "consider anew," as required by regulation 1625 upon request for hearing in writing.

3. That the board failed to decide whether or not the defendant was entitled to the 4–D classification.

4. The order of the local board for the defendant to perform civilian work at the state hospital and Sections 1660.1 and 1660.20 of the Selective Service Regulations are in conflict with the Act, because the work is not national or federal work, as required by the Universal Military Training and Service Act, 50 U.S. C.A.Appendix, § 451 et seq.

5. The Act, as construed and applied by the regulations and the order, calls for a private non-federal labor draft for the performance of services that are not "exceptional" or related to the National Defense in violation of the Thirteenth Amendment to the Constitution of the United States.

In order to determine the merit of the first three reasons for acquittal it is necessary to examine the evidence disclosed by the selective service file. The first questionnaire received by the local board on November 20, 1950 stated Mr. Kinney was a minister of religion since July 17, 1948, and he had been ordained on that date. He listed his secular work as a cement finisher for the past two years at $1.85 per hour, averaging 45 hours per week. He intended to continue at this work indefinitely. He claimed a ministerial exemption on the basis that he devoted 150 hours per month to ministerial activities from October, 1948 to June, 1950. Due to the fact this work was unsalaried he found it necessary to obtain secular employment, but he continued to devote 50 hours each month to the ministry. His ministry work consisted of regularly preaching from the pulpit, as well as visiting the poor and sick, and encouraging the study of the Bible in the home. He enclosed four affidavits with the questionnaire stating his sincerity in the ministry work. Mr. Kinney was classified 1–A by the local board December 27, 1950.

January 17, 1951, at his request Mr. Kinney appeared before the board. The summary of this meeting indicates that Mr. Kinney gave the board further proof of being a minister, but on January 17, 1951 he was again classified by the board 1–A.

Mr. Kinney appealed his classification, claiming his ministerial exemption. He wrote in his letter requesting appeal he was not the administrative head of any congregation, but he was considered within the ranks and teachings of said group an ordained minister. The appeal board classified Mr. Kinney 1–A.

In the meantime on August 20, 1951 Mr. Kinney was given his physical examination and found acceptable for service in the armed forces. In his report of medical history he stated he had one job in the past three years, and his usual occupation was construction work.

September 5, 1951 Mr. Kinney requested a conscientious objector's form, but noted that he still desired a 4–D exemption. He returned the conscientious objector's form to the board, and answered that from 1948 to 1950 he was a full time minister. He added that he did general contracting work with Carl Thomas as employer from 1950 to 1951.

Mr. Kinney refused to fill out the special report for class 1–O registrants October 27, 1952. He informed the board that his record indicated a primary vocation of an ordained minister and his secular work was secondary. He further noted "I am an engineer of equipment on a project in the interest of national safety, namely, easing the housing shortage in Rantoul, Illinois," and that this type of work completely meets the requirements for civilian work.

October 30, 1952 Mr. Kinney appeared before the board to discuss a civilian assignment. From the board's summary it appears Mr. Kinney said he felt his ministerial work was more important than any other work. He worked eight hours a day as a concrete man, and spent the rest of his time in the ministry. He further stated that he was doing defense work.

The board by letter requested Mr. Kinney to select one of three types of civilian work offered him on April 20, 1953. He replied by letter saying that he was refusing all such types of work as it would interfere with his ministry. His present secular work was limited so he could perform his ministerial work effectively. He further stated in recent months he had been made a servant in the Danville congregation.

Mr. Kinney met with the local board on May 28, 1953 to discuss civilian work assignment. Again he stated he was in construction work but budgeted his time to take care of his ministerial duties. He submitted a "Certificate for Service in Congregation," which recites that he officiated as an assistant presiding minister of the Danville, Illinois, congregation. Since January 2, 1953 he had been serving as an "Accounts Servant" for this congregation. He also regularly and customarily engaged in teaching and preaching. The board wrote Mr. Kinney "After consideration by the local board they were of the opinion that the information submitted was not new evidence and therefore refused to reopen the case." Mr. Kinney was ordered to report for hospital work at the Elgin State Hospital, Elgin, Illinois, September 17, 1953. He did not report to the hospital.

At the hearing before the court Mr. Kinney testified the summary by the board of January 17, 1951 was incomplete. In examining his testimony this court finds that the summary was sufficient. The summary is not required to be a judicial transcript of everything that was said before the board. It is sufficient if the file contains all the substantial facts bearing on the defendant's status. United States v. Mansavage, 7 Cir., 178 F.2d 812.

The defendant first maintains that he was denied his ministerial exemption when there was no basis in fact for the denial. The whole record in this case conclusively shows that the defendant was employed in the construction of homes, working 45 hours per week, at $1.85 per hour. He claimed he devoted more than 50 hours per month to the ministry. In view of such state of facts the board was not arbitrary and capricious in denying the 4-D classification. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152; United States v. Simmons, 7 Cir., 213 F.2d 901; United States v. Koch, D.C., 119 F.Supp. 650; United States v. Schuemann, D.C., 119 F.Supp. 640.

The second contention of the defendant that he should have had a further hearing by the board to determine his classification is without merit. The whole record discloses that Mr. Kinney's vocation was a cement finisher, doing general construction work with Carl Thomas as employer. So long as he maintained this employment the board was certainly justified in refusing to reopen his case.

In his brief the defendant argues that the local board was bigoted in its action and maintained a calloused attitude toward him. If the board showed any prejudice toward the registrant which the record does not reveal, the registrant was not prejudiced because he appealed his case.[1] The appeal board independent of any classification of the local board hears and disposes of cases upon the file which discloses all the facts. United States v. Pitt, 3 Cir., 144 F.2d 169; Cramer v. France, 9 Cir., 148 F.2d 801. The appeal board's decision in determining the registrant's status completely and finally substantiated the classification by the local board. Tyrrell v. United States, 9 Cir., 200 F.2d 8, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346.

The last two reasons of the defendant for acquittal were thoroughly discussed by this court in United States v. Smith, D.C., 124 F.Supp. 406. There is no merit to either of these contentions.

It must be concluded that the defendant is guilty as charged.

1. See Neal v. United States, 5 Cir., 203 F.2d 111.