**Herbert William MANKE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7612.**

United States Court of Appeals
Fourth Circuit.

Argued June 2, 1958.

Decided Sept. 24, 1958.

See also 255 F.2d 683.

Hayden C. Covington, Brooklyn, N. Y. (Lewin Wethered, Baltimore, Md., on the brief), for appellant.

William J. Evans, Asst. U. S. Atty., Baltimore, Md. (Leon H. A. Pierson, U. S. Atty., Baltimore, Md., on the brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and MOORE, District Judge.

MOORE, District Judge.

■ Appellant, a registrant with Selective Service Local Board Number 17 at Baltimore, Maryland, was convicted of knowingly refusing to submit to induction into the armed forces of the United States, and sentenced to a term of imprisonment. The facts leading up to the prosecution are as follows:

At the time of his registration on February 11, 1949, appellant was eighteen years of age and a student in engineering at the University of Maryland. He filed the usual classification questionnaire with the Local Board on November 30, 1950, wherein he claimed to be a conscientious objector. On December 4, 1950, he was classified as a student (I-A-P), and on May 15, 1951, the Local Board, having been furnished with information that appellant was enrolled in the Air ROTC, changed his classification to I-D, to fit that status.

Appellant's parents, originally Lutherans, had become affiliated in 1948 with the religious group known as Jehovah's Witnesses. Appellant himself joined this sect by baptism on June 1, 1952. Thereafter, on October 20, 1952, he filled out and filed with the Local Board a special form for conscientious objectors, and on December 16, 1952, was given that classification (I-O).

Appellant was not satisfied with the classification of conscientious objector. He had contended that because of having been appointed by the Watchtower Bible and Tract Society (the governing body of Jehovah's Witnesses) as a full time "Pioneer" minister, he was entitled to ministerial classification (IV-D). So he appealed from the Local Board's classification. The Appeal Board, on April 30, 1953, sustained the I-O classifica-tion. Appellant was then offered the choice among three types of civilian work as a conscientious objector. He refused them all. On October 5, 1953, the choice was again offered, and again refused. He has never been willing to submit himself to an order requiring him to do civilian work.

There followed more than three years of repeated hearings, during all of which time appellant was continually striving to convince the Local Board that he was entitled to be classified as a minister, and the Local Board remained firmly and consistently of opinion that he belonged in Class I-O. Finally, after having been again classified as I-O by the Local Board on August 15, 1955, appellant again appealed to the Appeal Board. The appeal was forwarded on September 12, 1955. On April 24, 1956, a Hearing Officer in the Department of Justice gave appellant a hearing on the question of the propriety of his classification and concluded, and so reported, that he was not entitled to a ministerial classification, but was properly classified as a concientious objector (I-O).

The Department of Justice also caused an inquiry to be made by the Federal Bureau of Investigation. The Chief of its Conscientious Objector Section then made a written recommendation to the Appeal Board that appellant was "not conscientiously opposed to participation in either combatant or noncombatant military training and service," and "that the appeal of the registrant be not sustained." The letter of recommendation contained the following statement:

"The information obtained from the inquiry and considered by the Department of Justice in arriving at its recommendation is. contained in the resume of the inquiry attached hereto and made a part hereof."

On the question of appellant's sincerity in his profession of conscientious objection to military training and service, the letter of recommendation contained the statement that "the resume shows that opinion was divided as to the sincerity

of registrant's conscientious objection." This was a misstatement of fact. Actually the résumé showed that eight specified persons and "other Jehovah's Witnesses" who were interviewed believed appellant to be sincere; five declined to express any opinion; one said that "he stood up for his religious beliefs except that he was against working on Saturday because of his religious beliefs but worked anyway;" and one that "she was surprised to learn that he was a conscientious objector because she knew that he had taken the ROTC training course at the University."

The only other reason given in the letter for the recommendation against conscientious objector (as distinguished from ministerial) classification, was that appellant "took the ROTC course at the University of Maryland during the 1951–1952 school year and during the time when he was studying with the Jehovah's Witnesses culminating in his ordination as a Jehovah's Witness minister in June, 1952." This fact was already thoroughly known both to the Local Board and to the Appeal Board, and had been considered by them in their previous classifications of appellant as a conscientious objector.

Appellant, having been furnished with a copy of the recommendation and the résumé, wrote the Appeal Board, pointing out the discrepancy between the letter of recommendation and the résumé, but the Appeal Board nevertheless, on November 1, 1956, proceeded to classify appellant in Class I-A; on November 21, 1956, he was ordered by the Local Board to report for induction; he refused; and prosecution followed. At the trial appellant's motions to require the Government to produce the original F. B. I. report, and to give him the names of the agents who made the investigation were denied.

On this appeal appellant assigns several grounds of error, which, reduced to their essentials, may be stated as follows: (1) That there was no basis in fact for the denial of either ministerial or conscientious objector classification;

(2) that he was denied a full and fair hearing before the Appeal Board; (3) that the report of the F. B. I. should have been furnished to appellant; (4) and that appellant should have been given the names of the F. B. I. agents who made the report.

The scope of judicial review in cases such as this is extremely narrow. As was said in the case of Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567:

> "The provision making the decisions of the local boards 'final' [now 50 U.S.C.A. § 460(b) (3)] means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

Applying this principle we find no merit in appellant's contention that the denial of ministerial and conscientious objector classification by the Appeal Board was without basis in fact. Ministerial classification might have been and evidently was denied chiefly because of the comparatively little time which appellant spent about his work as a "Pioneer" for Jehovah's Witnesses and the relatively long hours which he spent during the same period in secular work. Cf. Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Rowell v. United States, 5 Cir., 223 F.2d 863; United States v. Hill, 7 Cir., 221 F.2d 437. Likewise, there was a basis in fact for denial of conscientious objector classification in that the file showed his participation in Air ROTC at the University of Maryland at the time he asserted his conscientious objector claim.

and his full-time secular employment as an instrument mechanic's helper in the fuel department of the Bethlehem Steel Company, a defense plant closely connected with the production of war materials. See Blalock v. United States, 4 Cir., 247 F.2d 615.

■ Appellant's contentions that the F. B. I. report should have been furnished to him and that he should have been given the names of the agents who made the report are likewise without merit. In the case of United States v. Nugent, 1953, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, the Supreme Court speaking through Chief Justice Vinson laid down the following rule in 346 U.S. at page 6, 73 S.Ct. at page 994 of the opinion:

"* * * We think the Department of Justice satisfies its duties under § 6(j) when it accords a fair opportunity to the registrant to speak his piece before an impartial hearing officer; when it permits him to produce all relevant evidence in his own behalf and at the same time supplies him with a fair résumé of any adverse evidence in the investigator's report."

See also Simmons v. United States, 1955, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453.

Since the registrant was not entitled to see the F. B. I. report it follows as a matter of course that the identity of the agents who made the report was immaterial.

In considering appellant's remaining assignment of error, namely, that he was denied a full and fair hearing before the Appeal Board, we are confronted with a more serious question. We said in the case of Goff v. United States, 4 Cir., 135 F.2d 610, at page 612, that the action of the Draft Board "is to be taken as final, notwithstanding errors of fact or law, so long as the board's jurisdiction is not transcended and its action is not so arbitrary and unreasonable as to amount to a denial of constitutional right."

We recognize, of course, that appellant might have been properly prosecuted and convicted had he been ordered to report for civilian work as a conscientious objector. Having twice refused a choice among three types of civilian work, there is no reason to suppose that he would have obeyed such an order. However, in deciding this case we are confined to the narrow question of the validity or invalidity of the order for induction into the armed forces, and we are constrained to hold that order invalid for the following reasons:

■ The Supreme Court cases of Nugent and Simmons, supra, are authority for the proposition that lack of fundamental fairness in a hearing before the Appeal Board is a denial of procedural due process. We believe the record in this case shows that there was such lack of fairness with respect to appellant.

The Universal Military Training and Service Act provides for inquiry, hearing and recommendation by the Department of Justice whenever a registrant appeals from an order of his Local Board denying him conscientious objector classification. The section of the statute [50 U.S.C.A.Appendix, § 456 (j)] relating thereto is as follows:

"* * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, *if such claim is not sustained by the local board,* be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the *Department of Justice for inquiry and hearing.* The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. The Department of Justice shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board that (1) if the objector is in-

ducted into the armed forces under this title, he shall be assigned to noncombatant service as defined by the President, or (2) if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall in lieu of such induction be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate \* \* \*." (Emphasis supplied.)

The regulation adopted pursuant to the foregoing statute, insofar as it is pertinent to an appeal from a denial of I-O classification, reads as follows: (32 C.F.R. § 1626.25; E.O. 10363, 17 F.R. 5456, June 18, 1952)

"(2) If the registrant has claimed, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and by virtue thereof to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces, and the local board has classified the registrant in Class I-O, the appeal board shall proceed with the classification of the registrant. *If, in such a case, the local board has classified the registrant in any class other than Class I-O,* the appeal board shall transmit the entire file to the United States Attorney for the Federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice.

"(b) Whenever a registrant's file is forwarded to the United States Attorney in accordance with paragraph (a) of this section, the Department of Justice shall thereupon make an inquiry and hold a hearing on the character and good faith of the conscientious objections of the registrant. The registrant shall be notified of the time and place of such hearing and shall have an opportunity to be heard. If the objections of the registrant are found to be sustained, the Department of Justice shall recommend to the appeal board (1) that if the registrant is inducted into the armed forces, he shall be assigned to noncombatant service, or (2) that if the registrant is found to be conscientiously opposed to participation in such noncombatant service, he shall in lieu of induction be ordered by his local board to perform for a period of twenty-four consecutive months civilian work contributing to the maintenance of the national health, safety, or interest. If the Department of Justice finds that the objections of the registrant are not sustained, it shall recommend to the appeal board that such objections be not sustained.

"(c) Upon receipt of the report of the Department of Justice, the appeal board shall determine the classification of the registrant, and in its determination it shall give consideration to, but it shall not be bound to follow, the recommendation of the Department of Justice. The appeal board shall place in the Cover Sheet (SSS Form No. 101) of the registrant the letter containing the recommendation of the Department of Justice." (Emphasis supplied.)

■ Appeal from a denial of ministerial classification is not a waiver or withdrawal by a registrant of his claim of conscientious objection and does not preclude him from relying thereon if the ministerial classification is denied. Pine v. United States, 4 Cir., 212 F.2d 93; DeMoss v. United States, 8 Cir., 218 F.2d 119. See also United States v. Wilson, 7 Cir., 215 F.2d 443. Moreover, a reading of the statute and regulation discloses that neither contained any requirement whatever for an inquiry by the Department of Justice in those cases in which the Local Board has granted

524

conscientious objector classification but has denied ministerial classification. See DeMoss v. United States, supra; Weaver v. United States, 8 Cir., 210 F.2d 815; Elder v. United States, 9 Cir., 202 F.2d 465.

■ Here appellant made no objection, either at his trial or in this Court, to the inquiry, hearing and recommendation having been made. Therefore we do not consider such inquiry, though unauthorized by law, to be of itself ground for reversal.

■ However, we find that there was a lack of fairness in the recommendation which was made to the Appeal Board by the Department of Justice following the F. B. I. inquiry, to which recommendation was attached and made part thereof a résumé of the F. B. I. report. Appellant had been given the classification of I-O on no less than eight different occasions by the Local Board and on one occasion, upon appeal from denial of ministerial classification, the I-O classification had been affirmed by the Appeal Board. These decisions were all made at a time when there was in appellant's file all the evidence which was ever put there which would furnish a basis in fact for a denial of conscientious objector classification.

The F. B. I. inquiry, while it involved some new information bearing on appellant's right to ministerial classification, brought to light no substantial evidence of appellant's insincerity in claiming conscientious objector's status; yet in its letter to the Appeal Board the Department of Justice gives as its only new ground for its recommendation that appellant be classified as I-A the supposed fact that "the resume also shows that opinion was divided as to the sincerity of registrant's conscientious objection."

We think that in view of the entire history of this case as shown by the record, and in view of the fact that the Appeal Board had no new evidence before it adverse to appellant's claim of concientious objection, it would be unreal-

istic not to conclude that the Appeal Board, in classifying appellant as I-A was influenced largely if not wholly by the recommendation of the Department of Justice. Goetz v. United States, 9 Cir., 216 F.2d 270. Since the recommendation, being made a part of the résumé, was founded on a mistaken assumption of fact we hold that its consideration by the Appeal Board amounted to a denial of procedural due process, and therefore appellant was entitled to a judgment of acquittal.

Reversed.