Ronald Dean PITTMAN, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 15–68.

United States Court of Appeals
Tenth Circuit.

April 15, 1969.

Rehearing Denied May 13, 1969.

William C. Anderson, Tulsa, Okl., for appellant.

Ronald L. Howland, Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., and David A. Kline, First Asst. U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before HILL and HOLLOWAY, Circuit Judges, and BRATTON, District Judge.

HILL, Circuit Judge.

The appeal is from a judgment and sentence following a trial to the court without a jury, for violation of 50 U.S. C. App. § 462, in that appellant failed to report for and submit to induction into the Armed Forces.

After registering with his local draft board at Lawton, Oklahoma, appellant in January, 1961, submitted a written request with the Board for a IV–D ministerial classification. The request recited that registrant had been ordained into the Jehovah's Witness ministry on March 17, 1960; that he had served as a Vacation Pioneer during November and December, 1960; and that he intended to resume this service. Attached to the request were a number of letters from members of the Lawton Jehovah's Witness congregation, each vouching for registrant's status, qualifications and activities as a minister. In May, 1961, the Local Board denied the request and gave registrant a I–A classification. Pittman continued his efforts to obtain the ministerial classification and in April, 1964, the Local Board reclassified him as IV–D. In November of that year the Board renewed the classification after having received confirmation from church officials that the registrant was still a full time minister. Upon review of the file in November, 1965, the Board reclassified Pittman I–A. After the registrant had exhausted his administrative remedies the Board ordered him to report for induction on August 25, 1966. Pittman reported but refused to be inducted. He was indicted but prior to trial the indictment was dismissed apparently because the Government desired to give the registrant an opportunity to submit information to support a I–O conscientious objector classification.

On June 6, 1967, Pittman appeared before the Local Board and the Board minutes show that he refused to fill out the Special Form for Conscientious Objector. Pittman, during that hearing, also refused to furnish the Board with any current information concerning his ministerial status although he did indicate verbally that nothing had changed since his original IV–D classification. After reclassification, registrant again met with the Board, protested the refusal of the Board to give him the ministerial classification but again refused to furnish any current information to sustain such classification. On October 25, 1967, the Appeal Board sustained the I–A classification and on November 15, 1967, the Local Board ordered the registrant to report for induction on December 5, 1967. At that time Pittman refused to submit to induction and signed a statement attesting to that fact.

The registrant contends initially that his reclassification as I–A was without basis in fact and thereby invalidated the order to report for induction. He maintains that the information submitted to sustain his entitlement to the exemption in April and November of 1964, when coupled with his statements to the Board on June 6 and September 12, 1967, that his status had not changed, was sufficient to establish a prima facie case for a IV–D classification; that there was no inconsistent proof offered to or known by the Local Board; and that in these circumstances the I–A classification is unsupportable.

 The general principles governing judicial review of Selective Service classifications have been delineated in a series of well known Supreme Court cases.[1] In several recent decisions,[2]

1. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

2. Kuykendall v. United States, 387 F.2d 594 (10th Cir. 1968); Fore v. United States, 395 F.2d 548 (10th Cir. 1968); Owens v. United States, 396 F.2d 540 (10th Cir. 1968); Yeoman v. United States, 400 F.2d 793 (10th Cir. 1968).

this court has been called upon to refine those principles and to establish the criteria which must be met before the registrant is entitled to the ministerial exemption. From those decisions it is clear that the registrant bears the burden of establishing his right to the exemption. Moreover, the Board's determination as to whether that burden has been sustained is final unless lacking in basis in fact. Thus, the court will not weigh the evidence, but if the registrant establishes a prima facie case for an exemption, it may not be denied "merely because [the Local Board] does not believe the statements made by the applicant."

395 F.2d at 551. Accordingly, the first question to be resolved in these situations is whether the registrant supplied the Board with sufficient information to establish a prima facie case for the ministerial exemption.[3]

The registrant in seeking to establish his prima facie case makes the superficially appealing argument that because he was once classified IV–D, he is entitled to that classification until such time as the Board acquires affirmative information to the contrary. This is said to follow from the rule that once a registrant makes a prima facie case, it may not be denied in the absence of "some proof that is incompatible with the registrant's proof of exemption." Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132 (1953). Thus, it is asserted that once the registrant makes his case he is relieved of any further obligation of providing meaningful current information. Re-

duced to its bare essentials, the argument is that once the exemption is established it will continue because the only information available, even though outdated, establishes a right to the exemption.

■ The argument thus places complete reliance on the fact that the denial of the exemption occurred pursuant to a reclassification rather than as the result of an original classification. Yet the Selective Service regulations clearly indicate that the factors to be considered by the Board are the same in either instance. It is provided that upon a reclassification, the Local Board "shall again classify the registrant in the same manner as if he had never before been classified." 32 C.F.R. § 1625.11. The slate is to be wiped clean and just as in the case of any other classification the registrant must prove his exemption status. Consequently, the registrant's reliance upon outdated information—the information here was nearly three years old when the registrant made his final appearance before the Board in September, 1967—is clearly misplaced. It is apparent that a registrant could not appear before a Board for his initial classification and rely upon his conduct three years before as establishing his present right to an exemption.[4] Yet this is precisely what the registrant is attempting to do here. He has stood before the Board, presented outdated information together with his unsupported assertion that nothing has changed, and insisted that an exemption be granted. To pose the question of whether this can be said to constitute a prima facie show-

---

3. Before there need be any proof incompatible with the registrant's proof of exemption, he must have "tendered evidence to the Board which prima facie entitles him to the claimed exemption * * *." Wood v. United States, 373 F.2d 894, 897 (5th Cir. 1967); Yeoman v. United States, 400 F.2d 793 (10th Cir. 1968).

4. "[T]he board must classify * * * according to the existing facts." Fore v. United States, 395 F.2d 548, 552 (10th

Cir. 1968). All the cases discussing the type of conduct required to substantiate a claim for a IV–D classification, presuppose that the claimant must demonstrate that his immediate activity qualifies him for the exemption. The cases undeniably speak in terms of the number of hours presently devoted to ministerial work, e. g., "he *presently* devoted about 75 hours a month to door to door preaching * * *." Kuykendall v. United States, 387 F.2d 594 (10th Cir. 1968). [Emphasis supplied].

ing, is also to answer it. The registrant has not shown "that he 'devotes his time to preaching and teaching in the manner of a 'vocation'.'" Fore v. United States, 395 F.2d 548, 553 (10th Cir. 1968).

■■ Even disregarding the *de novo* nature of a reclassification, it is apparent that the registrant has misconceived the very nature of a ministerial exemption. It is not permanent. 32 C.F.R. § 1625.1. It is available only if it is demonstrated that the performance of preaching and other ministry activities comprises the registrant's vocation. Owens v. United States, 396 F.2d 540 (10th Cir. 1968). In the course of human affairs it is obvious that merely because it may once have been shown that the necessary time was devoted to the ministry, it does not necessarily follow that the requisite devotion continues. This fact of life is recognized in the lengthy statutory definition of a "regular or duly ordained minister of religion." It is provided that the term does not include "any person who may have been duly ordained * * * but who does not regularly, as a vocation, teach and preach the principles of religion * * *." 50 U.S.C. App. § 466(g) (3). An individual cannot be brought within that definition unless current information is provided. To sustain the registrant's contention to the contrary would not only ignore reality but would needlessly disrupt the effective administration of the Selective Service System. We conclude that the Board could properly determine that the registrant failed to satisfy the criteria for exemption as a minister when he failed to supply reasonably current information to substantiate that claim.

■ The registrant also contends that he should have been advised of his right to counsel and his right to remain silent prior to the taking of his written statement testifying to his refusal to be inducted.[5] This exact issue was presented to this court in Noland v. United States, 380 F.2d 1016 (1967), cert. den. 389 U.S. 945, 88 S.Ct. 308, 19 L.Ed.2d 299, where we concluded that Miranda warnings need not be given in this situation. This conclusion has not been affected by the recent decision in Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). There the Supreme Court indicated that tax investigations are *not* immune from the *Miranda* requirements. This was merely a reaffirmation of the principle that adequate warnings must be given prior to custodial interrogation. For the reasons expressed in Noland, Miranda is not applicable in the present situation.

Affirmed.

## ORDER DENYING PETITION FOR REHEARING

In support of the petition for rehearing, Pittman asserts that this court misinterpreted the nature of his position on appeal. It is suggested that the essence of his argument, and the distinction misunderstood by the court, is that his unsupported oral assertion to the Board that "nothing has changed" constituted current information which incorporated by reference the details of the various letters and other memoranda already in his file. Citing Dickinson v. United States and Fore v. United States, he maintains that this current information established a prima facie case which could not be overcome in the absence of affirmative information to the contrary.

Although we did not misconstrue appellant's contention and consider it adequately disposed of in the main opinion, we deem it advisable to add one brief point in elaboration. We do *not* read Dickinson, Fore or any of the other pertinent decisions to hold, as is asserted by appellant, that if the claimant makes an uncorroborated oral assertion that he is engaged in full time ministry, and no *conflicting evidence is taken by*

---

5. The statement read: "I Ronald Dean Pittman refuse to go into the Armed Forces of the United States because I am a full time Minister of Jehovahs Witnesses."

the Board, then the ministerial exemption must be granted. In both Dickinson and Fore there were letters from church officials and other documentary indicia tending to supply objective facts to substantiate the registrant's claim. As stated in Fore: "In considering whether appellant presented a prima facie case for fitting within the ministerial exemption only the basic facts of appellant's case should be considered and not expressions of intent or conclusionary statements." · 395 F.2d at 552. Consequently, the registrant's refusal to supply the Board with certain requested current information, and his reliance instead upon a bald assertion that nothing had changed during the lengthy interim since his prior classification, did not rise to the level of a prima facie showing and did not result in the Board's lacking a basis in fact for its action. Cf. United States v. Hogans, 253 F.Supp. 409, 411 (E.D. N.Y.1966), aff'd 369 F.2d 359 (2d Cir. 1966); United States v. Mohammed, 288 F.2d 236, 242 (7th Cir. 1961) cert. den. 368 U.S. 820, 82 S.Ct. 37, 7 L.Ed.2d 26. Thus, the unsupported oral assertion was inadequate; the outdated information in the file was immaterial; and the two taken together were insufficient to establish a prima facie case for exemption.

Petition for rehearing denied.